UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

W. CHRISTOPHER BEARY     CIVIL ACTION

VERSUS     NO. 16-15757

DAVID DEESE, et al.     SECTION A(5)

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 20)** filed by Defendants: David W. Deese ("Deese"), Quinco Electrical, Inc., Quinco Electrical of Dallas, Inc., Quinco Electrical of Georgia, Inc., Quinco Electrical of North Carolina, Inc., and Quinco Services, Inc. (collectively referred to as the "Quinco Corporations"). Plaintiff W. Christopher Beary opposes this motion (Rec. Doc. 23) and Defendants have replied (Rec. Doc. 30). The motion, set for submission on September 20, 2017, is before the Court on the briefs without oral argument. This matter is set as a bench trial beginning on December 4, 2017 at 9:30 a.m. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the Defendants' motion should be **GRANTED IN PART and DENIED IN PART** for the reasons set forth below.

### I. Background

Defendant David W. Deese is domiciled and resides in Orlando, Florida. (Rec. Doc. 1, p. 2). He is the sole shareholder, president, and chairman of the board of Quinco Electrical, Inc., Quinco Electrical of Dallas, Inc., Quinco Electrical of Georgia, Inc., Quinco Electrical of North Carolina, Inc., and Quinco Services, Inc. The Quinco Corporations are in the business of electrical

contracting with operations being directed from Quinco Electrical Inc.'s facility in Winter Park, Florida.

Plaintiff is a citizen of Louisiana. Plaintiff alleges he learned that Deese was offering to sell the Quinco Corporations around the start of 2016. The parties then negotiated for several months. On June 2, 2016, Deese signed a Letter of Intent ("LOI") setting forth the terms concerning the sale of the Quinco Corporations' assets to Plaintiff.[1] Defendants contend that the June 2, 2016 LOI superseded all prior written agreements between the parties and is the only effective written agreement pertaining to the sale of the Quinco Corporations' assests. (Rec. Doc. 20-1, p. 3). Among other provisions, the June 2, 2016 LOI provided that the buyer would pay to seller's counsel, to be held in trust, a deposit of $30,000. *Id.* The June 2, 2016 LOI also provided for a Due Diligence Period. During this period, Plaintiff could elect not to proceed with the sale and, upon such a decision by Plaintiff, the $30,000 deposit would be refunded. (Rec. Doc. 20-1, p. 5). The Due Diligence clause also stated that Defendants and Defendants' employees "shall fully cooperate with [Plaintiff] and its agents during the Due Diligence Period and shall grant full access to the Property, all leased locations, and each Seller's contracts, books and records." (Rec. Doc. 20-8, p. 2). The June 2, 2016 LOI also contains a Good Faith clause whereby the parties were to negotiate the Closing Documents in good faith. *Id.* Finally, Defendants note that the June 2, 2016 LOI contains an "Entire Agreement" clause, which provides:

> Entire Agreement. This Agreement constitutes the entire agreement between the parties hereto and supersedes any and all prior negotiations and agreements, implied or expressed, and oral or written in respect to the subject matter hereof unless such prior written agreements are expressly referred to herein but only to the extent of such reference. This Agreement may only be amended by written instrument executed by Buyer and Sellers. *Id.*

---

[1] The June 2, 2016 Letter of Intent is referred to as the "First Amended LOI" by the Plaintiff. It is referred to as the "Amended LOI" by the Defendants. For the sake of consistency, the Court will refer to the Letter of Intent signed by the Defendant on June 2, 2016 as the "June 2, 2016 LOI."

Plaintiff disagrees with Defendants' contention that the June 2, 2016 LOI is the only effective agreement between the parties. Plaintiff argues that the June 2, 2016 LOI was amended on July 20, 2016.[2] On July 18, 2016, Plaintiff informed Deese that the Plaintiff's bank would not be able to finance Plaintiff's purchase of the Quinco Corporations under the terms of the June 2, 2016 LOI. (Rec. Doc. 23, p. 4). Plaintiff proposed new terms to Deese on July 19, 2016. Later that day Deese countered with terms on which he was willing to proceed with the transaction. *Id.* The two parties went back and forth until Deese's counsel, Trevor Brewer ("Brewer"), sent Plaintiff a reply email that expressed Deese's counter to Plaintiff's new terms.[3] *Id.* at p. 5. The email also stated, "Since David [Deese]'s willing to give on all other areas, he'd like you to meet him on this one." *Id.* In response, Plaintiff wrote, "I agree, I will tell the bank and advise." *Id.* at 6.

Defendants maintain that the email exchange between Plaintiff and Brewer did not amend the June 2, 2016 LOI because it did not involve a written instrument executed by the parties in accordance with the "Entire Agreement" provision of the June 2, 2016 LOI. (Rec. Doc. 20-1, p. 5), *supra* p. 2. On the other hand, Plaintiff maintains that the email exchange resulted in an amendment to the June 2, 2016 LOI.

Thereafter, from around July 26, 2016 to August 12, 2016, the parties continued negotiations, but were unable to agree on new terms. Plaintiff maintains that Deese would orally agree to new terms then refuse to sign any amended LOI evidencing the new terms. Plaintiff

---

[2] Defendants do not acknowledge the July 20, 2016 amendments to the June 2, 2016 LOI. Plaintiff refers to the amendments allegedly agreed upon on July 20, 2016 as the "Second Amendment." For the sake of consistency, the Court will refer to the Letter of Intent with the alleged amendments occurring on July 20, 2016 as the "July 20, 2016 LOI."

[3] Plaintiff alleges that during the course of the July 19-20, 2016 negotiations, Deese was playing in a baseball tournament in the Dominican Republic. (Rec. Doc. 23, p. 5). Therefore, Brewer was allegedly communicating on behalf of Deese. The nature of Deese's and Brewer's relationship with one another and whether Brewer had the ability to bind Deese is relevant to this matter, but not addressed by the Court at this time.

identifies these refusals as six different "Repudiation of Agreed Terms." (Rec. Doc. 23, pp. 7-12). On the other hand, Defendants maintain that these proposed amendments were not executed by Defendant or Defendants' counsel and therefore expired on their own terms. (Rec. Doc. 20-1, p. 6). Plaintiff also alleges Deese and his employees purposefully failed to comply with numerous due diligence requests in accordance with the "Due Diligence" provision of the June 2, 2012 LOI.[4]

On August 12, 2016, Plaintiff's counsel, Jeffrey Oakes ("Oakes"), sent Brewer a letter stating that Defendants were being placed in default. Plaintiff contends that Defendants failed to cooperate with Plaintiff's due diligence requests and were therefore in breach of the July 20, 2016 LOI. (Rec. Doc. 23, pp. 12-16). Soon thereafter, Plaintiff directed Oakes to terminate the agreement and to not proceed with the purchase of the Quinco Corporations.

On October 21, 2016, Plaintiff filed suit against Defendants claiming breach of contract for failing to cooperate with due diligence requests, failing to negotiate the closing documents in good faith as required by the July 20, 2016 LOI, and for repudiating the July 20, 2016 LOI. Plaintiff also alleges claims of fraud and violation of the Florida Deceptive and Unfair Trade Practices Act. (Rec. Doc. 1).

**II.     Jurisdiction**

This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1332. The Plaintiff is a citizen of Louisiana. The Defendants are citizens of Florida, Georgia, North Carolina, and Texas. The Court finds that the amount in controversy exceeds $75,000.

---

[4] Neither the "Good Faith Negotiation" provision nor the "Due Diligence" provision were impacted by the alleged July 20, 2016 amendments. However, the parties seem to agree that a text message exchange between Plaintiff and Deese amended the Due Diligence Period by extending it from August 10, 2016 to August 31, 2016.

4

### III. Legal Standard

Defendants seek summary judgment in their favor arguing the following: (1) Plaintiff exercised his right under the contract to terminate the agreement during the Due Diligence Period; (2) alternatively, there was a non-binding preliminary agreement between the parties. Also, the July 20, 2016 email exchange between the parties did not amend the terms of any agreement between the parties; and (3) Plaintiff's fraud claim and claim under the Florida Deceptive and Unfair Trade Practices are both duplicative of the Plaintiff's breach of contract claim and, therefore, should be dismissed as well. (Rec. Doc. 20-1, pp. 1-2).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255).

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

## IV. Law and Analysis

Defendants' current motion seeks to dismiss Plaintiff's claims on three grounds. First, Defendants contend that Plaintiff's breach of contract claim should be dismissed because Plaintiff exercised his option to terminate the June 2, 2016 LOI. (Rec. Doc. 20-1, p. 8). Alternatively, Defendants argue that partial summary judgment should be granted because there was no binding final agreement between the parties, but rather only a non-binding preliminary agreement between the parties. Lastly, Defendants argue Plaintiff's fraud claim and claim under the Florida Unfair and Deceptive Trade Practices Act should be dismissed as duplicative of Plaintiff's breach of contract claim.

Before continuing into the analysis of these claims, the Court finds it necessary to outline the applicable law. Both parties concede that the agreement in contention "shall be governed and construed under the substantive laws of the State of New York without regard to conflicts of law principles." (Rec. Doc. 20-8, p. 6). Defendants are of the belief that the only valid agreement between the parties is the June 2, 2016 LOI, which superseded a May 11, 2016 LOI. (Rec. Doc. 20-1, p. 3). Plaintiff believes that the June 2, 2016 LOI was subsequently amended several more times, specifically on July 20, 2016 after an email exchange with Deese and Brewer. However, no amendments to either LOI sought to change the choice of law provision. The "Governing Law; Forum" provision states that any action brought to enforce or interpret the LOI would be governed by New York law and subject to the exclusive jurisdiction of the United States District Court for the Eastern District of Louisiana. (Rec. Doc. 20-8, p. 6). Therefore, whether the applicable LOI be the June 2, 2016 LOI or any subsequent amended agreement, New York law remains applicable to this matter.

### A. Plaintiff's right to terminate the agreement

To establish a breach of contract claim in New York, a plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2nd Cir. 1996). Defendants argue that there was no breach of contract because Plaintiff voluntarily exercised his option to terminate the June 2, 2016 LOI during the Due Diligence Period. (Rec. Doc. 20-1, p. 8). The relevant language of the Due Diligence provision provides:

> If, for any reason or for no reason, Buyer determines during the Due Diligence Period not to proceed with the transaction, Buyer shall so notify Sellers in writing, and Buyer shall have no further obligation whatsoever with respect to Sellers, the Property, or the transactions proposed by his letter, and the Deposit shall be refunded to the Buyer. (Rec. Doc. 20-8, p. 2).

In response, Plaintiff argues that he did not voluntarily terminate negotiations, but rather was forced to terminate negotiations out of fear that Defendant would tie up Plaintiff's $30,000 deposit in litigation. Another fear was that Defendant's attorney, Brewer, would hold the deposit until after the closing date, and then declare that Plaintiff was in default for failing to close on the June 2, 2016 LOI. (Rec. Doc. 23, p. 22). Therefore, Plaintiff maintains that he did not voluntarily break off negotiations. Rather, Plaintiff alleges he wished to buy the Quinco Corporations at all relevant times, but was forced to recede when Deese stopped cooperating.

Plaintiff presents evidence that attempts to show Deese was not fulfilling his due diligence obligations under the June 2, 2016 LOI. The June 2, 2016 LOI provides:

> Sellers and their agents and employees shall fully cooperate with Buyer and its agents during the Due Diligence Period and shall grant full access to the Property, all leased locations, and each Seller's contracts, books and records.

Because this provision was not altered by any alleged subsequent amendments to the June 2, 2016 LOI, it remains applicable to the parties. In his Opposition to Summary Judgment, Plaintiff

7

provides the Court with four pages worth of unfulfilled due diligence requests. (Rec. Doc. 12-16). Defendants do not address the shortfall of due diligence requests in their response.

Defendants point out that they need only prove two elements to show that Plaintiff voluntarily withdrew: (1) that Plaintiff informed Defendants that he elected not to proceed with the transaction, and (2) that he made that choice during the due diligence period. (Rec. Doc. 30-2, p. 3). In response to Plaintiff's argument that he was involuntarily forced to terminate the agreement, Defendants argue that Plaintiff's reasons for terminating the agreement are irrelevant. In doing so, Defendants rely on the fact that Plaintiff terminated the agreement between the parties during the Due Diligence Period in compliance with paragraph 4 of the June 2, 2016 LOI. *Id.* at p. 2. Paragraph 4 of the June 2, 2016 LOI provides for termination of the agreement and return of the $30,000 deposit "during the Due Diligence Period" for "any reason or for no reason . . . ." (Rec. Doc. 20-8).

However, the Court is not convinced that Plaintiff's reasons for withdrawing from the agreement are irrelevant. The Court finds that whether Plaintiff voluntarily withdrew from the transaction to be a genuine issue of material fact. It would be unfair to allow Defendants to hold Plaintiff's $30,000 deposit while also refusing to cooperate with due diligence requests from Plaintiff and thus blocking the deal. The question of whether Defendants complied with due diligence obligations under the June 2, 2016 LOI remains contested. However, at the summary judgment stage the Court must view the facts in a light most favorable to the non-moving party. Viewing the facts in a light most favorable to the Plaintiff, the Court cannot grant Defendants' motion on the ground that Plaintiff voluntarily withdrew from the agreement. Plaintiff has provided sufficient facts to show he may have been coerced into terminating the agreement by the fault of the Defendants.

## B. Whether the Letter of Intent between the parties was binding or non-binding

Both parties disagree as to which particular agreement governs this matter. Defendants claim that an agreement signed by Deese on June 2, 2016 superseded any previous agreements between the parties and is the only governing agreement between the parties. (Rec. Doc. 20-1. pp. 2-3). According to Defendants, the LOI signed by Deese on June 2, 2016 amended the LOI signed by the parties on May 11, 2016.

Plaintiff does not agree that the June 2, 2016 LOI is the only valid LOI between the parties. Rather, Plaintiff believes that the June 2, 2016 was amended twice. The first alleged amendment occurred on July 20, 2016 when Plaintiff exchanged a series of emails with Defendants' counsel, Brewer. Plaintiff contends that this email exchange constitutes a binding amendment under the June 2, 2016 LOI and New York law. (Rec. Doc. 23, p. 6). Plaintiff also points out that the Due Diligence Period was amended and extended from August 10, 2016 to August 31, 2016 during a text message exchange with Deese and Plaintiff.

However, the Court finds it unnecessary to determine which version of the LOI was effective between the parties at this time. Rather, the Court need only determine whether there exists a genuine issue of material fact regarding the binding nature of the LOI. In determining whether the parties' agreement was binding or non-binding, the Court must look to New York law in accordance with the parties' agreement.

"Parties to proposed commercial transactions often enter into preliminary agreements, which may provide for the execution of more formal agreements. When they do and the parties fail to execute a more formal agreement, the issue arises as to whether the preliminary agreement is a binding contract or an unenforceable agreement to agree." *Adjustrite Sys., Inc. v. GAB*

*Business Servs., Inc.,* 145 F.3d 543, 547 (2d Cir. 1998). "Ordinarily, where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract." *Id.* at 548. In some instances, however, "preliminary agreements can create binding obligations." *Id.* "Preliminary contracts with binding force can be of at least two distinct types." *Teachers Ins. And Annuity Ass'n of Amer. V. Tribune Co.*, 670 F.Supp. 491, 498 (S.D.N.Y. 1987). "One occurs when the parties have reached complete agreement (including the agreement to be bound) on all issues perceived to require negotiation." *Id.* "The second . . . is one that expresses a mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated." *Id.* Through this second type of agreement, "the parties can bind themselves to a concededly incomplete agreement in the sense that they accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement." *Id.* Unlike the first type, which "binds both sides to their ultimate contractual objective in recognition that the contract has been reached," the second type "does not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate the open issues in good faith in an attempt to reach the alternate objective within the agreed framework." *Id.*

Here, Plaintiff's Complaint contains claims that Deese and the Quinco Corporations were bound by the terms of the July 20, 2016 LOI and claims that Defendants failed to negotiate the closing documents in good faith as required by the agreement. (Rec. Doc. 1, p. 26). Therefore, the Court's analysis is not limited to determining whether the parties executed the first type of agreement and were bound by its terms. Even if the Court finds that the LOI was not binding, the possibility of Defendants breaching their duty to negotiate in good faith and their duty to cooperate with Plaintiff's due diligence requests would still need to be analyzed.

The Court acknowledges the four factor test set out in *Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244 (N.D.N.Y. 2015). However, these factors are not wholly dispositive of the issue at hand. According to the U.S. Court of Appeals for the Second Circuit, the ultimate issue "is the intent of the parties: whether the parties intended to be bound, and if so, to what extent." *Vacold LLC v. Cerami*, 545 F.3d 114, 125 (2nd Cir. 2008). The Court must also be "mindful of the need to balance two competing policy concerns. On the one hand, the courts must avoid trapping parties in surprise contractual obligations that they never intended." *Gas Natural, Inc. v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 379 (S.D.N.Y. 2014). On the other hand, "courts must enforce and preserve agreements that were intended to be binding, despite a need for further documentation or further negotiation." *Id.* (internal quotations omitted).

Therefore, in determining whether the breach of a letter of intent can give rise to a cause of action, New York law requires the Court to look to the intent of the parties as expressed in the LOI to determine whether the parties intended to be bound. *Vacold*, 545 F.3d 114, 125. Applying this law, the Court must analyze whether Defendants have presented sufficient evidence to show that there is no genuine issue as to the fact that Defendants did not intend to be bound. The Court finds that Defendants have not done so.

First, the Court takes note of an August 5, 2016 email exchange between Brewer, Defendants' attorney, and Oakes, Plaintiff's attorney. (Rec. Doc. 23, p. 26). In the exchange, Brewer states, "I think the reason that we are stuck on the Letter of Intent, and making sure every single point is in there before it gets signed, is the fact that the Letter of Intent is binding." (Rec. Doc. 23-9, p. 1). Brewer goes on to ask, "[W]ould you consider amending the LOI to make it non-binding, except for the obligation to negotiate in good faith and keep due diligence open through August 31?" *Id.* at p. 2. Oakes replies, "I have done a lot of deals with Chris (Beary), and I know

11

without asking that he will never agree to a nonbinding LOI." *Id.* at p. 1. Additionally, on July 6, 2017, Plaintiff writes an email to the Defendants' broker stating, "What is [Deese] referring to? We have a binding agreement . . . ." (Rec. Doc. 23-39, p.1). These email exchanges make it clear that the parties were under the impression that they were operating under a binding agreement.

Furthermore, the language of the LOI evidences that the agreement was binding. The first paragraph of the June 2, 2016 LOI begins by stating, "Each Seller shall sell to Buyer all assets in such." (Rec. Doc. 20-8, p. 1). Moreover, the agreement clearly states that "[Beary] will acquire the assets of [the Quinco Corporations]." *Id.*

Viewing the facts in a light most favorable to the non-moving party, the Court finds that Defendants have presented insufficient evidence to show that the agreement was non-binding. Because intent is disputed and is a material fact as to whether the LOI was binding, the Court cannot grant summary judgment on the basis that the agreement was non-binding. Moreover, this finding leaves open the issue of whether Defendants were bound by a duty to negotiate in good faith and, if so, whether such a duty was breached. Additionally, the factual question of whether Defendants fulfilled their duty to cooperate with Plaintiff's due diligence requests remains a genuine issue.

The Court recognizes that under New York law, "where a question of the parties' intent to be bound is determinable by written agreements, the question is one of law, appropriately decided . . . on a motion for summary judgment." *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 73 (2nd Cir. 1989) (internal quotations omitted). However, in this case, the parties' intent is only partly determinable by the written agreements. For example, while both parties may have expressed intent that the June 2, 2016 LOI was binding, the Court believes it would be premature to rule that the July 20, 2016 amended LOI was effective and binding between the parties. The

relationship between Brewer and Deese and whether Brewer had the ability to bind Deese to any agreement cannot be determined at this stage of the proceedings. Moreover, the issue of whether Brewer had the ability to bind Deese to an agreement is further complicated by the issue of whether an email message sent by an agent can act as a binding contract with respect to the principal.[5] (Rec. Doc. 23, p. 19).

Therefore, "[s]ince in this case intent [cannot] readily be determined by examining the [LOI], summary judgment [is not] appropriate" and the dispute must be presented to the trier of fact. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1998).

### C. Whether Plaintiff's fraud claim and claim under the Florida Deceptive and Unfair Trade Practices Act are duplicative of the Plaintiff's breach of contract claim

Defendants assert that summary judgment should be granted dismissing Plaintiff's fraud claims because it is duplicative of Plaintiff's breach of contract claim. Additionally, Defendants assert that summary judgment should be granted dismissing Plaintiff's Florida Unfair and Deceptive Trade Practices Act claim for the same reason. The Court takes each of these considerations in turn.

#### 1. Whether Plaintiff's fraud claims is duplicative

Plaintiff alleges that over the course of negotiations Deese continuously made materially false representations, and such misrepresentations were made intentionally to gain an unjust advantage in negotiations. (Rec. Doc. 1, p. 28). Furthermore, Plaintiff alleges that he "justifiably relied upon Deese's false statements in continuing to conduct his due diligence investigation and

---

[5] Plaintiff's counsel cites to New York law that allows such an agreement to become binding, but the Court is unwilling to rule on this issue without further briefing from both parties.

in continuing to negotiate with Deese." *Id.* Plaintiff alleges that he suffered damages by relying on these false statements, and that the amount of such damages will be shown at trial. *Id.*

Defendants argue that Plaintiff's fraud claim is duplicative of his breach of contract claim as the two claims arise under the same facts. (Rec. Doc. 20-1, p. 17). Defendants cite to New York law that holds:

> [W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract. *Telecom. Int'l Amer., Ltd. v. AT & T Corp.,* 280 F.3d 175, 196 (2d Cir. 2001).

In response, Plaintiff argues that if the Court finds the LOI to be non-binding, Deese still made "numerous misrepresentations regarding his intent and his actions during the course of negotiations with [Plaintiff]." (Rec. Doc. 23, p. 31). Thus, Plaintiff argues that his fraud claim is alternative, rather than duplicative, of his breach of contract claim.

The Court finds that Plaintiff's fraud claim is duplicative. Plaintiff makes the argument that if the agreement between the parties is found to be non-binding, then the breach of contract claim will fail completely. However, it is clear from the applicable case law, that a preliminary agreement that does not bind the parties to their ultimate contractual objective may still bind the parties to negotiate in good faith and cooperate with due diligence requests. *N.Y. Metro Peterbilt, Inc. v. Peterbilt Motors Co.*, No. 13-cv-843, 2015 WL 1469212, at *4 (E.D.N.Y. 2015) (citing *Teachers Ins. And Annuity Ass'n of Amer. v. Tribune Co.*, 670 F.Supp. 491, 498 (S.D.N.Y. 1987)). In *N.Y. Metro Peterbilt*, the plaintiff did not make any claims that the defendant was obligated to negotiate any open terms in good faith. *N.Y. Metro Peterbilt,* at *4. Therefore, the court in that case limited its analysis to determining whether the parties executed an agreement that bound them to the ultimate objective.

14

The case before this Court is distinguishable. Plaintiff's breach of contract claim includes allegations that Deese "failed to negotiate the closing documents in good faith" and "failed to fully cooperate with [Plaintiff] and his agents during the Due Diligence Period." (Rec. Doc. 1, p. 26). Therefore, even if the Court found that the parties were not fully bound by the June 2, 2016 LOI or the July 20, 2016 LOI, the parties may still be bound to negotiate in good faith and cooperate with the Plaintiff's due diligence requests. Thus, the Court finds that Plaintiff's fraud claim is duplicative of his breach of contract claim under New York law. Defendants' motion for summary judgment as to the dismissal of Plaintiff's fraud claim is granted.

### 2. Whether Plaintiff's Florida Unfair and Deceptive Trade Practices Act claim is duplicative

Plaintiff's claim under the Florida Unfair and Deceptive Trade Practice Act is fact-intensive. Allegations of bad faith, misrepresentation, and refusal to cooperate are allegations that are not suited for the summary judgment stage. For this reason, the Court denies Defendants' motion for summary judgment as to Plaintiff's claim under the Florida Unfair and Deceptive Trade Practices Act.

### V. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is denied in part and granted in part. Defendants' motion for summary judgment seeking to dismiss Plaintiff's breach of contract claim is denied. Defendants' motion for summary judgment seeking to dismiss Plaintiff's fraud claim is granted. Defendants' motion for summary judgment seeking to dismiss Plaintiff's Florida Unfair and Deceptive Trade Practices Act claim is denied.

Accordingly;

IT IS ORDERED that Defendants' **Motion for Summary Judgment (Rec. Doc. 20)** is **DENIED IN PART and GRANTED IN PART**;

IT IS FURTHER ORDERED that Defendants' motion for summary judgment seeking to dismiss Plaintiff's breach of contract claim is **DENIED**.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment seeking to dismiss Plaintiff's fraud claim is **GRANTED**. Plaintiff's claim for fraud is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that Defendants' motion for summary judgment seeking to dismiss Plaintiff's Florida Unfair and Deceptive Trade Practices Act claim is **DENIED.**

New Orleans, Louisiana, this 20th day of October, 2017.

                                              JUDGE JAY C. ZAINEY
                                       UNITED STATES DISTRICT JUDGE